UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EVAN WESTMORELAND,

                                    Plaintiff,

                    -vs-                                         07-CV-154(JTC)

PATRICK O'FLYNN, SHERIFF, MONROE COUNTY,
DEPUTY OFFICER AFONTIE, CORRECTIONAL OFFICER

                                    Defendants.

_____

APPEARANCES:            EVAN WESTMORELAND, Plaintiff *Pro Se.*

                              THUILLEZ, FORD, GOLD, BUTLER & YOUNG, LLP
                              (KELLY M. MONROE, ESQ., OF COUNSEL), Albany,
                              New York, Attorneys for Defendants.


## INTRODUCTION

        Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking declaratory,

compensatory, and punitive damages for the alleged deprivation of medical care.  The

parties originally consented to have the case heard by Magistrate Judge H. Kenneth

Schroeder (Item 51), but it was transferred to the docket of the undersigned by order

dated June 18, 2012 (Item 60).  Currently pending before the court are the defendants'

motion for summary judgment (Item 32) and plaintiff's motion to amend the complaint

(Item 50).


## BACKGROUND

        Plaintiff commenced this action on February 6, 2007 with the filing of a *pro se*

complaint pursuant to Title 42 U.S.C. § 1983.  He seeks compensatory and punitive

damages for the alleged deliberate indifference to his medical needs in violation of his rights under the Fourth[1] and Fourteenth amendments by named defendants Patrick O'Flynn, Sheriff of Monroe County, and Deputy Officer Ferranti[2], a Corrections Officer ("CO") at the Monroe County Jail (Item 1).  Plaintiff brings three causes of action: 1) defendants' acts were done deliberately and intentionally to deprive plaintiff with proper medical attention, 2) defendants' acts were intentional, reckless and unwarranted and they knew or should have known such acts were in violation of plaintiff's constitutional rights, and 3) defendants' actions were egregious and shocking to the conscience.

On June 6, 2007, defendant O'Flynn, through counsel, answered plaintiff's complaint and interposed twenty-three affirmative defenses, including plaintiff's failure to exhaust administrative remedies (Item 7).  On January 29, 2009, following the parties' exchange of discovery materials, defendants moved for summary judgment pursuant to Fed. R.Civ.P. 56 (Item 32).  Defendants assert the following grounds for summary judgment motion: 1) if deemed to be sued in their official capacities, they should be dismissed from the case; 2) the municipality cannot be held liable for plaintiff's claimed injuries because the plaintiff has not shown that a municipal policy or custom caused his claimed injuries; 3) the complaint should be dismissed for failure to state a cause of action upon which relief can be granted; 4) if deemed to be sued in their individual capacities, they are entitled to qualified immunity and the complaint

---

[1]  The court will assume that plaintiff intended to cite the Eighth Amendment as his claims clearly implicate the Eighth Amendment's prohibition against cruel and unusual punishment.

[2]  Plaintiff's original complaint names defendant Deputy "Afontie."  However, in his response in opposition to the motion for summary judgment, he correctly names the defendant as Deputy "Ferranti."

against them should be dismissed; 5) the plaintiff is not entitled to punitive damages; 6) the complaint should be dismissed for lack of proper service; 7) the plaintiff failed to exhaust his administrative remedies; and 8) that the plaintiff received prompt and appropriate care with no deliberate indifferent to plaintiff's medical needs (Item 32).  In response, plaintiff argued that no reasonable jury could find in defendants' favor and that there are genuine issues of material fact for trial (Item 41).

On April 14, 2009, plaintiff filed a motion to amend/correct the complaint (Item 50).  He seeks to correct the mis-identification of "Deputy Afontie" and to add a cause of action for conspiracy.  On April 20, 2009, defendants filed a response in opposition to the motion to amend (Items 53, 54), and a reply in support of their motion for summary judgment (Items 55, 56).

The court has determined that oral argument is unnecessary.  For the reasons that follow, defendants' motion for summary judgment is granted and plaintiff's motion to amend is denied.

## FACTS[3]

Plaintiff was incarcerated at the Monroe County Jail on or about September 3, 2004 (Item 32, Exh. G, p. 14).  During the booking process, plaintiff advised the medical personnel that he had scoliosis as a child and had rods in his spine as a result of spinal

---

[3]  This factual statement is taken from the defendants' Statement of Material Facts (Item 32, att. 13), the plaintiff's testimony at a hearing pursuant to N.Y. General Municipal Law § 50-h (Item 32, Exh. G), plaintiff's medical records from the Monroe County Jail and the New York State Department of Corrections (Item 32., Exhs. C, H), and the affidavits of Sheriff Patrick O'Flynn and Lt. John LiPari (Item 32, atts. 10, 11) .

surgery. *Id.,* p. 18.  On April 18, 2005, at around 7:15 pm, plaintiff was playing a game of cards with fellow inmates in his assigned housing area.  Plaintiff was sitting in a facility issued chair when the chair collapsed, causing him to fall backwards on the galley bars and hit his head, neck, and back. *Id.,* pp. 21, 24.  Plaintiff submitted a "Health Services Request Form" at that time (Item 32, Exh. C, att. 6, p. 76).  On April 19, 2005, plaintiff was examined by a nurse, who advised him to take Motrin and to alternate an ice pack with a warm shower (Item 32, Exh. C, att. 6, p. 65).  On April 20, 2005, plaintiff submitted another "Health Services Request Form" and asked to be taken to an outside physician. *Id.,* p. 75.  On April 24, 2005, plaintiff submitted an "Inmate Internal Communication Form" in which he stated that he had fallen out of a chair and the facility medical department was failing to help him with his back and neck pain (Item 32, Exh. C, att 5, p. 2).  Plaintiff submitted a "Health Services Request Form" on April 26, 2005, complaining of back pain and requesting to see a doctor and to be taken to an outside hospital (Item 32, Exh. C, att. 6, p. 73).  On April 27, 2005, plaintiff was seen by a doctor who examined him and found that he was able to sit on the examining table "very comfortably. " *Id.,* p. 67.  The doctor prescribed Robaxin, ordered an x-ray of plaintiff's spine, and directed him to follow up in two weeks. *Id.,* p. 60.  The x-rays of plaintiff's thoracic and lumbosacral spine taken April 28, 2005 showed mild scoliosis, no gross abnormalities, and no fracture or focal destructive lesion.  The radiologist noted that if the plaintiff's symptoms were to persist, "a bone scan might be helpful." *Id.,* p. 50.  On April 29, 2005, plaintiff received a written response on his Internal Communication Form.  It indicated that the medical record had been reviewed

and plaintiff's concerns had been addressed.  *Id., p.* 2.  The writer noted that plaintiff

had been seen by a nurse on April 19, 2005 and by a doctor on April 27, 2005.  He was

prescribed Motrin and Robaxin, x-rays were ordered, and plaintiff was advised to follow-

up in two weeks.  *Id.*  X-rays one year later, from April 25, 2006, indicated a normal

cervical spine.  *Id., p.* 76. Views of the lumbosacral spine indicated rods in "good

position," mild scoliosis, and no fracture.  *Id.*

        In support of the motion for summary judgment, defendants submitted an

affidavit of Lt. John A. LiPari, III, grievance coordinator for the Monroe County Sheriff's

Department (Item 32, att. 11).  The grievance policy in effect at the time plaintiff was

incarcerated provided that inmates may "utilize Internal Communication Forms to

communicate with ... Jail/Correctional Facility staff to resolve complaints or problems or

to request services . . .."  *Id.*  If the inmate remained dissatisfied with the response to

his complaint, he was instructed to request a Grievance Form and was required to file a

grievance with the grievance coordinator within five days of the act or occurrence giving

rise to the grievance.  *Id.*  If the inmate was dissatisfied with the decision of the

grievance coordinator, he could appeal to the superintendent of the facility. *Id*.  After

receiving a response from the superintendent, the prisoner could seek review of the

superintendent's decision with the State Commission of Correction.  *Id.*

        Lt. LiPari stated he reviewed the grievance file for the time period that plaintiff

was incarcerated at the Monroe County Jail and found that there were no grievances

filed by the plaintiff in accordance with the grievance policy.  *Id*., ¶ 3.  Additionally, in an

affidavit, Sheriff Patrick M. O'Flynn stated that he made no decisions regarding

5

plaintiff's medical care and treatment and, to the best of his knowledge, he "never received any letters from plaintiff regarding his complaints and disagreement with the medical care and treatment he received at the Monroe County Jail in 2005." (Item 32, att. 10, ¶¶ 4, 5).

## DISCUSSION

### 1.   Summary Judgment Standard

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 311 n. 7 (S.D.N.Y. 2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F.Appx. 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a

6

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest").  "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

7

In this case, plaintiff alleges that officials at the Monroe County Jail were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments of the Constitution.  Defendants do not dispute that the conduct alleged was committed by individuals acting under color of the law. Accordingly, the court turns its attention to the second essential element of plaintiff's §1983 claim - whether the conduct complained of deprived plaintiff of his constitutional right to adequate medical care.

**2.      Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act of 1995 ("PLRA"), mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord* 441 F.Supp.2d 631, 636 (S.D.N.Y. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Neal v. Goord*, 267 F.3d

116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle,supra)* .

In assessing the affirmative defense of non-exhaustion, the Second Circuit employs a three-part inquiry. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004).  A court must (1) determine whether administrative remedies were in fact "available" to the prisoner; (2) consider whether the defendant has forfeited the affirmative defense of non-exhaustion or is estopped from raising it; and (3) determine whether "special circumstances" justify the prisoner's failure to comply with administrative procedural requirements. *Id*.  "Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal" in assessing availability.  *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003).

In New York, formal exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program.  *See* N.Y. Comp.Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5.  In this case, the Monroe County Jail employed a similar, three-tiered grievance process with review of an inmate's complaint by the grievance coordinator, the Superintendent, and finally the New York State Commission of Correction.  Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche*, 2006 WL 2309592, at *7 (S.D.N.Y. August 10, 2006) (citing cases).

Here, as stated by Lt. John A. LiPari, there was a grievance procedure in place at the Monroe County Jail that was available to plaintiff (Item 32-12, p.9).  Further, Lt. LiPari stated he reviewed the grievance file for the relevant time period and found no

formal grievances filed by the plaintiff in accordance with the grievance policy effective

at the time. *Id*. On April 24, 2005, plaintiff completed an internal communication form

complaining that the medical department was failing to help him with his back and neck

injuries (Item 32, Exh. C, p. 2). Plaintiff now argues this internal communication form

was used as a grievance form (Item 42, ¶7). He has admitted not filing a formal

grievance, but asks the court to excuse his failure and consider his informal

communication regarding his medical needs to be sufficient for purposes of the PLRA

exhaustion requirement.

The informal communication of grievances is not sufficient to satisfy the

exhaustion requirements of the PLRA. "The Second Circuit has made clear that even if

prison officials have notice of a prisoner's claims as a result of such informal

communications, the purposes of the PLRA's exhaustion requirement can only be

realized through strict compliance with the applicable administrative procedures."

*Mamon v. N.Y. City Dep't of Corr.*, 2012 WL260287, at *4 (S.D.N.Y. January 27, 2012)

(citing *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007)). Additionally, plaintiff has

asserted no grounds for estoppel of the defense of non-exhaustion, such as threats of

retaliation, physical assault, denial of grievance forms, or transfer. *See Amador v.*

*Andrews,* 655 F.3d 89, 103 (2d Cir. 2011) (prisoner may invoke the doctrine of estoppel

if defendants took affirmative action to prevent him from availing himself of grievance

procedures). Likewise, plaintiff has not alleged "that his failure to exhaust was based

on a reasonable, but erroneous interpretation of prison regulations," rendering the

"special circumstances" exception for failure to exhaust inapplicable. *McDowall v.*

*Metro. Corr. Ctr.*, 2010 WL 649744, *7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases).

As plaintiff has failed to raise a genuine issue of material fact regarding exhaustion, the

motion for summary judgment on this basis is granted and the complaint is dismissed.


### 3.     Constitutional Claims

Even if the court were to excuse plaintiff's failure to exhaust his administrative

remedies, the complaint would nonetheless be dismissed as plaintiff has failed to

establish a constitutional violation.

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress ….

42 U.S.C. § 1983.  "In order to maintain a section 1983 action, two essential elements

must be present: (1) the conduct complained of must have been committed by a person

acting under color of state law; and (2) the conduct complained of must have deprived a

person of rights, privileges, or immunities secured by the Constitution or laws of the

United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v.

Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. September 16, 2011).

 "The Eighth Amendment's prohibition against cruel and unusual punishment has

been construed to include the denial of adequate medical care for an inmate's serious

medical needs."  *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. October 10, 2002);

see also *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The care provided to prisoners to treat their injuries or illnesses must meet minimum medical standards of adequacy and be reasonably intended to satisfy their medical needs.  To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

        Under 42 U.S.C. § 1983, every claim for deliberate indifference to a serious medical need must pass a two-pronged test consisting of objective and subjective elements.  First, the court must determine whether, objectively speaking, plaintiff's condition is such that the alleged deprivation of medical assistance is "sufficiently serious." *Woods*, 2002 WL 31296325, at *3 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir.1994)); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the court must consider whether the official "'knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it.'" *Woods* 2002 WL 31296325 at *3 (internal cites and alterations omitted); *Harrison v. Barkley*, 219 F.3d at 137.

        A serious medical need is one with some urgency or one which, if ignored, may

produce death, degeneration or extreme pain. *Hathaway,* 37 F.3d at 66.  As the Second

Circuit held in *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), there is no precise

metric to guide the court in its estimation of the seriousness of a prisoner's medical

condition. Any inquiry into the objective component of an Eighth Amendment claim

must be tailored to the specific facts of each case. *Smith v. Carpenter*, 316 F.3d 178,

185 (2d Cir. 2003).  In *Chance v. Armstrong*, the Court set forth a non-exhaustive list of

factors that are relevant to the inquiry whether a given medical condition is serious.

These factors include: (1) whether a reasonable doctor or patient would perceive the

medical need in question as "important and worthy of comment or treatment;" (2)

whether the medical condition significantly affects daily activities; and (3) "the existence

of chronic and substantial pain." *Chance,* 143 F.3d at 702.

     The question of whether persistent back pain rises to a level of constitutional

significance depends upon the circumstances of the particular case presented.

*Compare Mendoza v. McGinnis*, 2008 WL 4239760, *10 (N.D.N.Y. September 11,

2008) (finding degenerative disc disease to constitute a serious medical need); *Faraday*

*v. Lantz*, 2005 WL 3465846, *5 (D. Conn. December 12, 2005) (persistent complaints

of "lower back pain caused by herniated, migrated discs [and] sciatica" leading to

severe pain constitutes a serious medical need), with *Cain v. Jackson*, 2007 WL

2193997, *6 (S.D.N.Y. July 27, 2007) (degenerative disc disease in cervical spine,

which was compounded when plaintiff fell from her cell bunk and injured her back, was

not sufficiently serious); *Veloz v. New York,* 339 F.Supp.2d 505, 522-26 (S.D.N.Y.

2004), *aff'd,* 178 Fed. Appx. 39 (2d Cir. 2006) (plaintiff's chronic back pain and mild to

13

moderate degenerative spondylosis of spinal vertebrae did not establish a serious

medical need); *Davis v. Reilly*, 324 F.Supp.2d 361, 368 (E.D.N.Y. 2004) (A "sprained

back and neck ... do not constitute a serious medical condition.").

Here, the plaintiff complained of bruising to the back of his neck and back pain

(Item 1, ¶23).  Plaintiff was seen and examined by medical staff the day after his fall

from the chair, and again one week later.  He was prescribed medication, x-rays were

ordered, and he was instructed to follow-up with medical staff.  The x-rays indicated

mild scoliosis but no gross abnormalities.[4]   Plaintiff alleges in his complaint that he has

had problems walking since the incident (Item 1, ¶31), however there is no objective

medical evidence in the record to support this statement.  Plaintiff's back pain is not

caused by fracture or dislocation and a radiology report of plaintiff's cervical and lumbar

spine showed only mild degenerative changes of the cervical spine and no significant

degenerative changes of the lumbar spine (Item 32-13, ¶23).  Based on the objective

medical evidence, the court finds that plaintiff has not shown a serious medical need.

Even setting aside the question of whether plaintiff's injuries were sufficiently

serious, there is no evidence of defendants' deliberate indifference to his medical

needs.  Plaintiff complained that he was not seen immediately by the medical

department the night of his fall, that he should have been sent to a hospital for an

examination, that he did not see a doctor until one week later, and that the x-rays

should have been done sooner.  "A difference of opinion between a prisoner and prison

---

[4]  The record indicates that plaintiff complained of back pain prior to his fall from the chair on April 18, 2005.  X-rays were taken of his lumbosacral spine on April 1, 2005 which indicated no fracture or dislocation and no gross abnormality (Item 32, Exh. C, att. 6, p. 51).

officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Serv.,* 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001); *see also Chance,* 143 F.3d 698 at 703 ; *McCloud v. Delaney*, 677 F.Supp. 230, 232 (S.D.N.Y.1988) ( "[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards."). Additionally, "[m]ere delay in the rendering of medical treatment in and of itself does not rise to the level of a constitutional violation." *Smith v. Montefiore Med. Ctr.-Health Serv. Div.*, 22 F.Supp.2d 275, 280 (S.D.N.Y. 1998). "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Sonds,* 151 F.Supp.2d at 311; *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). "To demonstrate a constitutional violation, a plaintiff must show that he sustained substantial harm because of the delay in the rendering of medical treatment." *Smith,* 22 F.Supp.2d at 280. "As long as the medical care is adequate, there is no Eighth Amendment violation." *Sonds*, 151 F.Supp.2d at 311; *see also Wandell v. Koenigsmann*, 2000 WL 1036030, *3 (S.D.N.Y. July 27, 2000) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). In this case, plaintiff was seen by a nurse within 24 hours and  received medication, medical advice, diagnostic x-rays, and follow-up care with a physician.  Even granting plaintiff the benefit of every favorable inference, it cannot be said that this medical care was adequate or evinces deliberate indifference on the part of the defendants.

     Based on the foregoing, no reasonable jury could find that the defendants acted

with deliberate indifference to plaintiff's medical needs in violation of his rights under the Eighth and Fourteenth amendments.  Accordingly, defendants are entitled to summary judgment as a matter of law dismissing plaintiff's complaint and the court need not consider the alternative grounds raised by defendants in their motion.

### 4.  Plaintiff's Motion to Amend/Correct the Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely granted "when justice so requires." Fed.R.Civ.P. 15(a)(2).  "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Futility turns on whether an amended pleading could withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

The court has determined that the complaint must be dismissed for failure to exhaust administrative remedies or, in the alternative, for failure to show a constitutional violation.  As plaintiff's proposed amendments to the complaint do not cure these insufficiencies, amendment would be futile.  Accordingly, the plaintiff's motion is denied.

### CONCLUSION

The defendants' motion for summary judgment (Item 32) is granted and the complaint is dismissed.  Plaintiff's motion to amend/correct the complaint (Item 50) is denied.  The Clerk of the Court is directed to close the case.

So Ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: 6/20          2012
p:\pending\2007\07-154.june712